UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MANCHESTER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. ____18-cv-815-LM____

<u>CONSENT DECREE</u>

**TABLE OF CONTENTS**

I. JURISDICTION AND VENUE ......................................................................................... 1

II. APPLICABILITY .......................................................................................................... 2

III. DEFINITIONS ............................................................................................................. 3

IV. CIVIL PENALTY .......................................................................................................... 4

V. COMPLIANCE REQUIREMENTS .................................................................................. 5

VI. REPORTING REQUIREMENTS .................................................................................... 7

VII. STIPULATED PENALTIES .......................................................................................... 9

VIII. FORCE MAJEURE ................................................................................................... 12

IX. DISPUTE RESOLUTION ............................................................................................ 14

X. INFORMATION COLLECTION AND RETENTION ....................................................... 17

XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........................................... 19

XII. COSTS ..................................................................................................................... 21

XIII. NOTICES ................................................................................................................ 21

XIV. EFFECTIVE DATE ................................................................................................... 23

XV. RETENTION OF JURISDICTION ............................................................................... 23

XVI. MODIFICATION ...................................................................................................... 23

XVII. TERMINATION ...................................................................................................... 24

XVIII. PUBLIC PARTICIPATION ..................................................................................... 24

XIX. SIGNATORIES/SERVICE ........................................................................................ 25

XX. INTEGRATION ......................................................................................................... 25

XXI. FINAL JUDGMENT ................................................................................................. 26

XXII. APPENDICES ......................................................................................................... 26

Case 1:18-cv-00815-LM   Document 1-3   Filed 09/11/18   Page 3 of 41

APPENDIX A ................................................................................................................ A-1

APPENDIX B ................................................................................................................ B-1

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree, for injunctive relief and civil penalties pursuant to Section 113(b)(2) of the Clean Air Act ("CAA"), 42 U.S.C. § 7413(b)(2), alleging that Defendant, the City of Manchester, New Hampshire ("Manchester" or "Defendant"), violated regulations set forth in 40 C.F.R. Part 62, Subpart LLL, promulgated by EPA pursuant to Title I of the CAA, 42 U.S.C. §§ 7411 and 7429, and Section 129(f)(3) of the CAA, 42 U.S.C. § 7429(f)(3);

WHEREAS, the Complaint alleges that Defendant violated the above-listed federal environmental statutes and regulations at Manchester's sewage sludge incinerator located at 300 Winston Street, Manchester, New Hampshire (the "Facility"). The Facility is designed to treat sewage sludge with a fluidized bed sewage sludge incinerator.

WHEREAS, Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1345, and 1355; Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and over the Parties.

Venue lies in this District under Section 113(b) of the CAA, 42 U.S.C. § 7413(b); and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the alleged violations took place in this District. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Consent Decree and any such action, and over Defendant, and consents to venue in this judicial district.

2. For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted under Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

3. Notice of commencement of this action has been given to the State of New Hampshire, specifically the New Hampshire Department of Environmental Services ("NHDES"), by the United States.

## II. APPLICABILITY

4. The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

5. No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented. At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 1, the United States Attorney for the District of New Hampshire, and the United States Department of Justice in accordance with Section XIII (Notices). Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

2

6.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. DEFINITIONS

8.      Terms used in this Consent Decree that are defined in the CAA, or in regulations promulgated pursuant to the CAA, shall have the meanings assigned to them in the CAA or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Business Day" shall mean a day other than a Saturday, Sunday, or federal holiday.

b. "Complaint" shall mean the complaint filed by the United States in this action.

c. "Consent Decree" or "Decree" shall mean this Decree and Appendices A and B attached hereto.

d. "Day" shall mean a calendar day unless expressly stated to be a Business Day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next Business Day.

e. "Defendant" shall mean the City of Manchester, New Hampshire.

3

f. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

g. "Effective Date" shall have the definition provided in Section XIV (Effective Date).

h. "Facility" shall mean the sewage sludge incinerator unit owned or operated by Defendant and located at 300 Winston Street, Manchester, New Hampshire.

i. "Interest" shall mean an amount calculated at the rate specified in 28 U.S.C. § 1961.

j. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

k. "Parties" shall mean the United States and Defendant.

l. "Section" shall mean a portion of this Decree identified by a Roman numeral.

m. "United States" shall mean the United States of America, acting on behalf of EPA.

## IV. CIVIL PENALTY

9. Within 45 Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $131,800 as a civil penalty, together with Interest at the rate as of the date of lodging, and accruing from the date on which the Consent Decree is lodged with the Court.

10. Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with written instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of New Hampshire after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this

4

Consent Decree. The FLU will provide the payment instructions to Kevin A. Sheppard, Public Works Director, City of Manchester, 475 Valley Street, Manchester, N.H. 03103 and ksheppard@manchesternh.gov on behalf of Defendant. Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices).

11.     At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XIII (Notices); and (iii) to EPA in accordance with Section XIII (Notices). Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. City of Manchester* and shall reference the civil action number, CDCS Number, and DOJ case number 90-5-1-1-11620/1.

12.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V. COMPLIANCE REQUIREMENTS

13.     Defendant shall comply with the requirements of Appendices A and B of this Consent Decree in accordance with the schedules therein. Appendices A and B are incorporated into and are fully enforceable under this Consent Decree.

14.     Approval of Deliverables. After review of any plan, report, or other item that is required to be submitted pursuant to Appendix A of this Consent Decree or Sections V (Compliance Requirements), VI (Reporting Requirements), and VIII (Force Majeure), EPA shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

5

15.     If the submission is approved under Paragraph 14(a), Defendant shall take all actions required by the plan, report, or other item, in accordance with the schedules and requirements of the plan, report, or other item, as approved.  If the submission is conditionally approved or approved only in part pursuant to Paragraph 14(b) or (c), Defendant shall, upon written direction from EPA provided in the conditional or partial approval, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Defendant's right to dispute only the specified conditions or the disapproved portions, under Section IX (Dispute Resolution) of this Consent Decree.

16.     If the submission is disapproved in whole or in part under Paragraph 14(c) or (d), Defendant shall, within 45 Days or such longer period of time as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

17.     Any stipulated penalties applicable to the original submission, as provided in Section VII (Stipulated Penalties) of this Consent Decree, shall accrue during the 45 Day period or such longer period as the Parties agree to in writing, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

6

18.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Defendant to correct any deficiencies in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

19.     Permits. Where any compliance obligation in Appendix A requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section VIII (Force Majeure) of this Consent Decree for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI. REPORTING REQUIREMENTS

20.     Within 15 Days of the close of each month after the date of lodging of this Consent Decree, until termination of this Decree pursuant to Section XVII (Termination), Defendant shall submit to EPA reports as required by 40 C.F.R. § 62.15895, and shall submit to the U.S. Department of Justice and EPA in accordance with Section XIII (Notices) a monthly report for the preceding month that shall include:  all compliance measures taken; milestones in Appendix A completed; problems encountered or anticipated (together with solutions implemented or proposed); status of any permit applications; and results of any inspections or tests performed, or any repairs made. In order for the Parties to more easily track Defendant's performance of the actions it is obligated to perform under the terms of this Consent Decree, Defendant shall provide, on a monthly basis with its monthly status reports, the spreadsheet form

7

attached hereto as Appendix B, in which it shall describe its performance of such actions and its progress, during the previous month, to bring the Facility into compliance.

21.     If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall make a written report to the United States of such violation and its likely duration, within 10 Business Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent, correct, or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 45 Days of the Day Defendant becomes aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII (Force Majeure).

22.     Whenever any violation of this Consent Decree or of the environmental statutes, regulations and permits referenced herein, or any other event affecting Defendant's performance under this Decree, or the operation of the Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic mail as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

23.     All reports and notifications shall be submitted to the persons designated in Section XIII (Notices) of this Consent Decree.

24.     Each report submitted by Defendant under this Section shall be signed by an official of the Defendant and include the following certification:

8

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

25.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA or its implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

26.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII. STIPULATED PENALTIES

27.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any payment of civil penalties, compliance requirements of this Decree and any work plan or schedule approved under this Decree, and submission of any required reports or notifications, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

9

28.     Late Payment of Civil Penalty.  If Defendant fails to pay the civil penalty required to be paid under Section IV (Civil Penalty) of this Decree when due, Defendant shall pay a stipulated penalty of $500 per Day for each Day that the payment is late.

29.     The following stipulated penalties shall accrue per violation per Day for each violation of a requirement specified in Section V (Compliance Requirements):

*Period of Noncompliance Penalty per Violation per Day*

| | |
|---|---|
| 1st through 14th Day | $250.00 |
| 15th through 30th Day | $500.00 |
| 31st Day and beyond | $1000.00 |

30.     Reporting Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI (Reporting Requirements):

*Period of Noncompliance Penalty per Violation per Day*

| | |
|---|---|
| 1st through 14th Day | $250.00 |
| 15th through 30th Day | $500.00 |
| 31st Day and beyond | $1000.00 |

31.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until such performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree. Stipulated penalties shall accrue regardless of whether the United States has notified Defendant that a violation of this Consent Decree has occurred.

32.     Defendant shall pay any stipulated penalty within 45 Days after receiving the United States' written demand.

10

33.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

34. a. Stipulated penalties shall continue to accrue as provided in Paragraph 31 during any Dispute Resolution, but need not be paid until the dispute is resolved by agreement of the Parties or by a decision of EPA that is not appealed to the Court.  Defendant shall pay accrued penalties determined to be owing, together with Interest, to the United States within 45 Days of the effective date of the agreement or the receipt of EPA's decision.

b. If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with Interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.  Notwithstanding Paragraph 31 of this Consent Decree, during such judicial review by the Court, stipulated penalties shall not accrue with respect to the disputed violation during the period, if any, beginning on the 60th Day after the Court's receipt of the motion provided for by Paragraph 48, until the date that the Court issues a final decision regarding such dispute.

c. If either Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with Interest, within 45 Days of receiving the final appellate court decision.

35.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 10 and 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

11

36.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for Interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

37.     The payment of penalties and Interest, if any, under this Section shall not alter in any way Defendant's obligations to complete the performance of the requirements of this Consent Decree.

38.     Subject to the provisions of Section XI (Effect of Settlement/Reservation of Rights) of this Consent Decree, the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.  Where a violation of this Consent Decree is also a violation of the CAA or regulations thereunder, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violations.

## VIII. FORCE MAJEURE

39.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of any of Defendant's contractors that delays or prevents the full performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) after it has occurred to prevent or

12

minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

40.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Defendant shall provide notice orally or by electronic mail to EPA as soon as possible but no later than within 72 hours of when Defendant first knows that the event might cause a delay. Within seven Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or any of Defendant's contractors knew or should have known.

41.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of obligations under this Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force

13

majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

42.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

43.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 39 and 40.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX. DISPUTE RESOLUTION

44.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

45.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.

Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement of the Parties. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 15 Days after the conclusion of the informal negotiation period, unless that period is modified by written agreement of the Parties, Defendant invokes formal dispute resolution procedures as set forth below.

46.    Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. Defendant's Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant; and may specify the Defendant's position as to whether formal dispute resolution should proceed under Paragraph 50(a) or 50(b).

47.    The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The Director of the Office of Environmental Stewardship, EPA Region 1, will issue a final decision resolving the matter in dispute. The decision of the Director of the Office of Environmental Stewardship shall be binding upon the Defendant, subject only to the right to seek judicial review, in accordance with the following Paragraph. An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted by the

15

Parties. Where appropriate, EPA may allow submission of supplemental statements of position by the Parties.

48. Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 10 Business Days of receipt of the United States' Statement of Position pursuant to Paragraph 47. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree. Defendant's motion to the Court shall not raise new issues or submit new facts that were not previously presented to the United States during formal dispute resolution.

49. The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

50. Standard of Review.

a. Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 46 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

16

b. Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 46, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

51.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Except as set forth in Paragraph 34.b., stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of nonperformance, but payment shall be stayed pending resolution of the dispute, as provided in Paragraph 34.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. INFORMATION COLLECTION AND RETENTION

52.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a. monitor the progress of activities required under this Consent Decree;

b. verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c. obtain samples and, upon request, splits of any samples taken by either Defendant or its representatives, contractors, or consultants;

d. obtain documentary evidence, including photographs, video and similar data; and

e. assess compliance with this Consent Decree.

17

53.     Upon request, Defendant shall provide EPA or its authorized representative splits of any samples taken by Defendant.  Upon request, EPA shall provide Defendant splits of any samples taken by EPA.  Upon request, EPA shall provide Defendant with copies of photographs taken at or of the Facility.

54.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information retention requirement shall apply regardless of any contrary corporate, municipal or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

55.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph within its possession or control and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or

18

information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

56. Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2. Defendant may make no claim of business confidentiality or protection regarding any air emission records that Defendant is required to create or generate pursuant to this Consent Decree.

57. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

58. This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging of this Consent Decree. This Consent Decree does not limit any rights or remedies available to the United States for any criminal violation.

59. The United States reserves all legal and equitable remedies available to enforce the provisions of the Consent Decree, except as expressly stated in Paragraph 58. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or

19

injunctive relief under the CAA or implementing regulations, or under other federal laws, regulations or permit conditions, except as expressly specified in Paragraph 58. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, Defendant's Facility, whether related to the violations addressed in this Consent Decree or otherwise.

60.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, or other appropriate relief relating to the Facility, Defendant shall not assert, and may not maintain, any defense or claim based on the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 58 of this Section.

61.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CAA, or any other provisions of federal, State, or local laws, regulations, or permits.

62.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

63.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII. COSTS

64.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII. NOTICES

65.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email:    eescdcopy.enrd@usdoj.gov
RE: DJ# 90-5-1-1-11620/1

As to the United States by mail:    EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-11620/1

As to EPA by mail:    Director
Office of Environmental Stewardship
EPA Region 1
5 Post Office Square, Suite 100
Boston, Massachusetts  02109-3912

21

As to EPA by email:                        Tahani Rivers, Attorney-Advisor
rivers.tahani@epa.gov
Steve Rapp, Chief, Air Technical Unit
rapp.steve@epa.gov

As to Defendant Manchester by mail:  Kevin A. Sheppard
Public Works Director
Department of Public Works ("DPW")
City of Manchester
475 Valley Street
Manchester, NH  03103

Emily Gray Rice, Esq.
City Solicitor
One City Hall Plaza
Manchester, N.H.  03101

Gregory H. Smith, Esq.
McLane Middleton, P.A.
11 South Main Street, Suite 500
Concord, NH 03301

As to Defendant Manchester by e-mail:  Frederick J. McNeill, P.E., Chief Engineer
FMcNeill@ManchesterNH.gov

Kevin Sheppard, Director, DPW
KSheppard@manchesternh.gov

Emily Gray Rice, City Solicitor
erice@manchesternh.gov

Gregory H. Smith, McLane Middleton, P.A.
greg.smith@mclane.com

66.     Any Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

67.     Notices submitted pursuant to this Section, including electronic mailing, shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV. EFFECTIVE DATE

68.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket; provided, however, that Defendant hereby agrees that it shall be bound to perform duties scheduled to occur prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

## XV. RETENTION OF JURISDICTION

69.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX (Dispute Resolution) and XVI (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XVI. MODIFICATION

70.     The terms of this Consent Decree, including Appendices A and B, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

71.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 50, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

23

## XVII. TERMINATION

72.     After Defendant has completed the requirements of Section V (Compliance Requirements), Section VI (Reporting Requirements), and Appendix A of this Decree, has thereafter maintained continuous satisfactory compliance with this Decree for a period of two years, and has paid the civil penalty and any stipulated penalties and Interest as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that the requirements of this Consent Decree have been met, together with all necessary supporting documentation.

73.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

74.     If the United States does not agree that the Decree may be terminated, Defendant may invoke dispute resolution under Section IX (Dispute Resolution).  However, Defendant shall not seek dispute resolution of any dispute regarding termination until 30 Days after service of its Request for Termination.

## XVIII. PUBLIC PARTICIPATION

75.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate,

24

improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX. SIGNATORIES/SERVICE

76.    Each undersigned representative of Defendant and the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

77.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XX. INTEGRATION

78.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding between the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXI. FINAL JUDGMENT

79.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXII. APPENDICES

80.     Appendices A and B are attached to and part of this Consent Decree.


Dated and entered this ___29th___ day of _____ November, 2018.

_____
UNITED STATES DISTRICT JUDGE

FOR PLAINTIFF UNITED STATES OF AMERICA:


5/30/18
DATE

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice


9/4/18
DATE

PETER K. KAUTSKY
Trial Attorney
U.S. Department of Justice
Environmental Enforcement Section
Environment and Natural Resources Division



SCOTT W. MURRAY
United States Attorney
District of New Hampshire

27

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

_8/14/18_
DATE

TIM CONWAY, Acting Director
Office of Environmental Stewardship
U.S. Environmental Protection Agency, Region 1
5 Post Office Square-Suite 100 (Mail Code OES04-5)
Boston, MA  02109-3912


_8/14/18_
DATE

TAHANI ANN RIVERS
Enforcement Counsel
U.S. Environmental Protection Agency, Region 1
5 Post Office Square - Suite 100 (Mail Code OES04-3)
Boston, MA  02109-3912


OF COUNSEL

PROVIDENCE SPINA
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, N.W. (Mail Code: 2242A)
Washington, D.C.  20460

28

FOR DEFENDANT CITY OF MANCHESTER:

_____
DATE

The Honorable Joyce Craig
Mayor

29

### Appendix A

No later than January 12, 2020, and in accordance with the schedule set forth below, Manchester shall comply with **all** applicable requirements of 40 C.F.R. Part 62, Subpart LLL ("Subpart LLL") including but not limited to those cited below.

1. **General Compliance Obligations**

   a. Manchester has determined, based on prior emission tests, that to demonstrate compliance with the mercury emission limit of Subpart LLL, it will be necessary to design, install and operate a mercury control system. Therefore, in accordance with the schedule set forth in this Appendix A, Manchester shall design, install, and operate a mercury control system, and demonstrate compliance with the applicable requirements of Subpart LLL and of this Consent Decree.

   b. For the Interim Period, which is the period between the Effective Date and the date Manchester commences operation of the mercury control system, Manchester shall:

      i. Implement the Interim Mercury Management Plan outlined in Paragraphs 6.a. through 6.d. to minimize mercury emissions to the greatest extent practicable.

      ii. For all pollutants except mercury, comply with a Control Plan (which, on January 11, 2018, EPA deemed adequate for the system as it is currently described) and a Site-Specific Monitoring Plan ("SSMP") (which, on January 11, 2018, EPA deemed adequate for the system as it is currently described).

Case 1:18-cv-00815-LM   Document 1-3   Filed 09/11/18   Page 34 of 41

2. **Interim Period – Initial Operating Limits**

   a.  Based on the results of the performance test completed December 14, 2017, Manchester shall establish site-specific operating limits, as required by 40 C.F.R. § 62.15985.

   b.  Manchester shall continuously monitor the applicable operating limits, in accordance with 40 C.F.R. § 62.16005 and report any deviations in accordance with 40 C.F.R. § 62.16030(d).

3. **Interim Period – Initial Compliance Report**

   a.  Within 60 days of the Effective Date, Manchester shall submit to EPA an initial compliance report containing the information required by 40 C.F.R. § 62.16030(b), including, but not limited to, the following:

      i.  The complete report containing the performance test results from the performance test completed December 14, 2017;

      ii.  The initial performance evaluations of any continuous monitoring systems;

      iii.  The values for the site-specific operating limits including calculations and methods;

      iv.  The results of the initial air pollution control device inspection;

      v.  The SSMP for all pollutants; and

      vi.  The SSMP for the ash handling system.

   b.  In the Interim Period, if Manchester fails to demonstrate compliance with the emission limits described in Table 2 of Subpart LLL for any pollutant other than mercury, Manchester shall propose measures for attaining and demonstrating

A-2

compliance with the emission limit(s).  Manchester shall propose these measures to EPA for review and approval, as expeditiously as practicable, but no later than 60 days from knowledge of a failure.

4. **Interim Period – Annual Compliance Testing**

    a. Except as provided in 40 C.F.R. §§ 62.16000(a)(3) and (e), Manchester shall conduct a performance test for all pollutants (including mercury) on an annual basis (between 11 and 13 calendar months following the previous performance test). If Manchester operates at any time during the 11th to 13th calendar months, following its previous performance test, it must conduct such performance test. However, if it is shut down during the entire 11th to 13th calendar months, to install its mercury control system, then it may forego that one performance test.

    b. For each such annual performance test, Manchester shall submit a notification and request for approval of the performance test and a site-specific test plan for all pollutants, including mercury, to EPA at least 30 days prior to the annual performance test.

    c. After receiving EPA approval of the site-specific test plan, Manchester shall conduct its annual performance test to demonstrate compliance with emission limits and standards for all pollutants, including mercury. *See*, 40 C.F.R. §§ 60.8, 62.16000, and 62.16015.

    d. If Manchester plans to make changes to its monitoring procedures, make a process change, or make a request for alternate monitoring, it must follow the requirements of 40 C.F.R. §§ 62.15995 and 62.16000.

A-3

5. **Interim Period – Annual Compliance Report(s)**

As provided in 40 C.F.R. § 62.16030(c), Manchester shall submit an annual compliance report no later than 12 months following its submission of the initial compliance report required by 40 C.F.R. § 62.16030(b) and Paragraph 3 of this Appendix A. Manchester shall submit subsequent annual compliance reports no later than 12 months after submittal of the preceding annual compliance report.

6. **Interim Period – Interim Mercury Management Plan**

a. **Reporting**

In the monthly reports required under Paragraph 20 of this Consent Decree, Manchester shall provide a detailed update on all requirements under this Appendix A.

b. **Industrial Permittees**

i. Manchester shall evaluate the mercury content of wastewater by weight contained in the past three years of semi-annual self-monitoring reports submitted by all facilities discharging to the Wastewater Treatment Plant ("WWTP") under a municipal Industrial Discharge Permit (i.e., an Industrial Permittee) to determine the highest concentrations of mercury discharged to the WWTP.

ii. Manchester shall evaluate the mercury content of the past three years of wastewater samples by weight taken by Manchester to determine the facilities that have the highest concentrations of mercury discharged to the WWTP.

A-4

iii. For the top 10 percent of facilities identified in 6.b.i. and 6.b.ii. of this Appendix A, Manchester shall send an outreach letter to the Industrial Permittee requesting their assistance in reducing mercury from their wastewater discharges, and schedule a meeting with the Industrial Permittee to discuss how best to address the exceedance.

c. **Towns with Inter-Municipal Agreements – Bedford, Goffstown, and Londonderry**

i. Manchester shall evaluate the mercury content of the wastewater samples by weight from Bedford, Goffstown, and Londonderry on a monthly basis, rather than quarterly, to determine whether a town exceeds its WWTP limit for mercury.

ii. If a town exceeds its WWTP limit for mercury, Manchester shall send an outreach letter to the town's Department of Public Works asking for their assistance in reducing mercury in their wastewater discharges, and shall schedule a meeting with the town to discuss how best to address the exceedance.

d. **Dental Offices**

Manchester shall conduct inspections of dental offices under the Industrial Pretreatment Program's Dental Amalgam Program every year, rather than every other year, to verify that the equipment used to separate dental amalgam is being used and is being properly maintained.

A-5

A-6

7. **Mercury Compliance Measures**

  a. The control plan submitted by Manchester on May 1, 2018, will become effective after EPA approval of the plan and any applicable petitions, and when Manchester commences operation of the mercury control system.

  b. No later than 30 days after EPA's approval of the new control plan and receiving approval for any petitions for site-specific operating limits, Manchester shall submit a new SSMP for EPA approval. Manchester shall include in its submittal any additional specific requirements for alternate monitoring parameters as outlined at 40 C.F.R. § 62.15995(e).

  c. No later than July 11, 2019, Manchester shall commence operation of the mercury control system and any other controls necessary to achieve compliance with Subpart LLL.

  d. Within 60 days of commencing operation of the mercury control system, Manchester shall conduct an air pollution control device inspection of the mercury control system as required by 40 C.F.R. § 62.15990(a) and submit the results to EPA in the next monthly report submitted by Manchester pursuant to Paragraph 20 of this Consent Decree.

  e. After receiving EPA approval of the new SSMP, and within 60 days of commencing operation of the mercury control system, Manchester shall submit to EPA (i) a notification of its intent to perform a performance test and (ii) a site-specific test plan for all pollutants.

  f. After receiving EPA approval of the site-specific test plan, Manchester shall conduct a performance test with its mercury control system in place to

A-6

demonstrate compliance with emission limits and standards.   Manchester shall conduct subsequent tests on a new cycle, 11 to 13 months after the date of this test.  *See*, 40 C.F.R. §§ 62.15980(a), 60.8, 62.16000, and 62.16015.

8. **Compliance Demonstration with Mercury Control System in Place**

    a.   Within 60 days of completing the performance test referenced in Paragraph 7.f. of this Appendix A, with the mercury controls in place, Manchester shall submit a new compliance report that includes:

        i.   The complete report containing the performance test results;

        ii.   The performance evaluations of any continuous monitoring systems;

        iii.   The values for the new site-specific operating limits including calculations and methods established based on the testing referenced in Paragraph 7.f. of this Appendix A;

        iv.   The results of the air pollution control device inspection described in Paragraph 7.d. of this Appendix A;

        v.   The SSMP described in Paragraph 7.e. of this Appendix A; and

        vi.   A copy of the existing SSMP for the ash handling system.

9. **Annual Compliance Reports with Mercury Control System in Place**

Within 12 months of Manchester's submittal of the compliance report required by Paragraph 8.a. of this Appendix A, Manchester shall submit to EPA the first of the required annual compliance reports covering the period in which the mercury control system is in place.  Subsequent annual compliance reports shall be submitted to EPA no more than 12 months following the submission of the previous annual compliance report.  *See*, 40 C.F.R. § 62.16030(c).

A-7

10. **Failure to Demonstrate Compliance**

From the time when Manchester commences operation of the mercury control system until termination of this Consent Decree, if Manchester fails to demonstrate compliance with emission limits for any pollutant, including mercury, Manchester shall propose measures for attaining and demonstrating compliance with the applicable emission limit(s). Manchester shall propose these measures to EPA for review and approval, as expeditiously as practicable, but no later than 60 days from knowledge of a failure.

11. **Title V Operating Permit Application**

Within 120 days of submitting the compliance report referenced in Paragraph 8.a of this Appendix A, Manchester shall submit an amended Title V Operating Permit Application to New Hampshire Department of Environmental Services. *See*, 40 C.F.R. § 70.5(b).

## Appendix B

| CD - Appendix A, Paragraph # | Description | Actionable Item/Report | Due Date | Original Submission/ Completion Date | Document History | Current Status |
|---|---|---|---|---|---|---|
| City of Manchester Compliance Tracking Spreadsheet (40 CFR Part 62, Subpart LLL) - Appendix B | | | | | | |
| **Interim Compliance, Pre-mercury Control** | | | | | | |
| 2.a. | Establish initial operating limits (OL) applicable prior to installation of mercury controls | Establish OL | 2/12/2018 | Due with ICR | | |
| 3.a. | Initial Compliance Report (ICR) for All Pollutants Other Than Mercury | ICR | 2/12/2018 | 5/17/2018 | | |
| N/A - Completed | Control Plan for All Pollutants Other Than Mercury | Control Plan | | 6/23/2017 | | |
| N/A - Completed | Site-specific monitoring plan (SSMP) for All Pollutants Other Than Mercury | SSMP | | 7/28/2017 | | |
| N/A - Completed | Initial Performance Test | Performance Test | | 12/14/2017 | | |
| N/A - Completed | Initial Test Report | ERT Test Report | 2/12/2018 | 2/12/2018 | | |
| **Interim Annual Compliance, Pre-mercury Control** | | | | | | |
| 2.b. | Submit deviation reports | | Due bi-annually | | | |
| 4.b. | Submit notification/approval of performance test & site-specific test plan | Notification and Test Plan | At least 30 days prior to test | | | |
| 4.a. | Annual Performance Test | Performance Test | No later than 1/14/2019. Only required if facility is operating at any time during the 11th to 13th calendar months, following its previous performance test. | | | |
| Relating to 4.a. | Test Report | ERT Test Report | Within 60 days of completing the 4.a. performance test. | | | |
| 5 | Annual Compliance Report (CR) | CR | The first compliance report is due no later than 12 months after the Initial Compliance Report described in 3.a. Subsequent Compliance Reports due 12 months after the previous report was due. | | | |
| **Interim Period - Interim Mercury Management Plan** | | | | | | |
| 6.a. | Provide update in monthly reports of App. B requirements | Monthly report | Monthly during Interim Period (between now and when Manchester commences operation of the mercury control system) | | | |
| 6.b.i. | Evaluate mercury content of wastewater by weight taken by facilities discharging to Wastewater Treatment Plant | | Interim Period | | | |
| 6.b.ii | Evaluate mercury content of wastewater samples by weight taken by Manchester | | Interim Period | | | |
| 6.b.iii | Send outreach letter and schedule meeting with the top 10 percent of facilities with highest mercury concentrations | Outreach letter and meeting | Interim Period | | | |
| 6.c.i | Evaluate mercury content of wastewater samples by weight from Bedford, Goffstown, Londenderry | | Monthly (rather than quarterly) during Interim Period | | | |
| 6.c.ii | Send outreach letter and schedule meeting if town exceeds wastewater treatment plant mercury limit | Outreach letter and meeting | Interim Period | | | |
| 6.d | Conduct inspections of dental offices to verify use and maintenance of equipment used to separate dental amalgam | | Annually (rather than biennially) during Interim Period | | | |
| **Final Compliance** | | | | | | |
| Relating to 7.a. | Control Plan and Petition for Site-specific Operating Limits for Mercury Control | Control Plan and Petition | 5/1/2018 | Control Plan submitted 5/1/2018, and Petition submitted 12/5/2017 | | |
| 7.b. | Updated SSMP Reflecting the Final Configuration | SSMP | 30 days after incorporating EPA's comments into a final control plan and receiving approval for any petitions for site-specific operating limits. | | | |
| 7.c. | Commence Operation of the Mercury Control System | Mercury air pollution control device operational | 7/11/2019 | | | |
| 7.d. | Conduct an Air Pollution Control Device Inspection | Equipment Inspection | Within 60 days of the completion of all work in 7.c. | | | |
| 7.e. | Submit a Notification of Performance Test and Site-Specific Test Plan | Notification and Test Plan | Within 60 days of the completion of all work in 7.c. | | | |
| 7.f. | Initial Performance Test Under Final Configuration | Performance Test | Within 30 days of EPA's approval of the site-specific test plan submitted under 7.e. | | | |
| 8.a.i. | Initial Test Report Under Final Configuration | ERT Test Report | Within 60 days of the Initial Performance Test under final configuration conducted under 7.f. | | | |
| 8.a. | Initial Compliance Report Under Final Configuration | ICR | Within 60 days of the Initial Performance Test under final configuration conducted under 7.f. | | | |
| 9 | Annual Compliance Report | CR | The first compliance report is due no later than 12 months after the Initial Compliance Report described in 8.a. Subsequent Compliance Reports due 12 months after the previous report was due. | | | |
| 11 | Submit an amended Title V Operating Permit Application to NH DES | Permit Application | Within 120 days of the Initial Compliance Report under final configuration conducted under 8.a. | | | |
| 1.a | Comply with all applicable requirements of 40 C.F.R. Part 62, Subpart LLL | | 1/12/2020 | | | |